145 So.2d 187

**Charles W. KEMP et al.**

v.

**Clint JACKSON, Adm'r.**

**6 Div. 450.**

Supreme Court of Alabama.

Sept. 20, 1962.

Parsons, Wheeler & Rose, Birmingham, for appellee.

Sadler, Sadler, Sullivan & Herring, Birmingham, for appellants.

COLEMAN, Justice.

This is an appeal by two, of three defendants, from a judgment for plaintiff, in an action for wrongful death of plaintiff's intestate. Verdict and judgment were against all three defendants, to wit, Kemp, Copeland, and Gamble. Kemp and Copeland appealed. Gamble was summoned to appear and unite in the appeal, but he has not done so.

The case went to the jury under Count B, which alleges that Kemp operated, for hire, motor vehicles known as wreckers to bring in disabled automobiles; that plaintiff's intestate, Clint Jackson, verbally contracted with or engaged from Kemp, for $40.00 which was paid to Kemp, a wrecker with a driver to bring intestate's disabled automobile into Birmingham from a place near Cullman; that Kemp, or his employee acting within the line and scope of his employment, requested intestate to ride in the cab of the wrecker from Birmingham to the place where intestate's automobile was, to show the driver of the wrecker where the automobile was and identify it; that intestate did ride in the wrecker from Birmingham to a place near Garden City where the wrecker, while en route, was in collision with another motor vehicle; that the wrecker was driven on said trip by Copeland who was the employee of Kemp; that the latch on the right door of the cab of the wrecker was, at the time intestate engaged the wrecker and at the time of collision, in a defective, dangerous, and unsafe condition; that, on the trip, the wrecker was involved in a collision with an automobile; that the defective latch on the right door of the wrecker failed to hold said door closed, the door came open, and intestate was thrown out of the wrecker through said open door and suffered injuries whereof he died; that Copeland, who was the employee of Kemp and acting within the line and scope of his employment, was negligent in so transporting intestate in the cab of said wrecker with said defective, dangerous, and unsafe latch, knowing the same to be defective, dangerous, and unsafe; that Gamble so negligently operated an automobile at said time and place that it ran into the wrecker, injuring intestate so that he died; that the injury and death of intestate were proximately caused by the concurring negligence of Copeland and Gamble, and that Copeland was the agent of Kemp and was acting within the line and scope of his agency.

Defendants pleaded in short with leave, etc.

We understand that it is not disputed that intestate was driving his automobile toward Birmingham; that the automobile broke down near Cullman; that intestate left the car and went to Birmingham where he engaged a wrecker from Kemp to bring the car to Birmingham; that intestate and his brother got into the wrecker, which had one seat and was driven by Copeland as employee of Kemp, and proceeded toward Cullman; that Copeland was driving the wrecker and seated on the left side, intestate's brother was seated in the middle, and intestate was sitting on the right next to the right door of the wrecker.

It appears without dispute that when the journey began the latch of the right door of the wrecker was defective, and that defendant Copeland had prior knowledge of the defect. He testified as follows:

"A When the door locked, there was a safety lock on it, and you could slam it and it would catch. But on rough roads, the lock would bounce open to the safety, but it wouldn't come clear open.

\* \* \* \* \* \*

"Q On the day you started up to Cullman to pick up the car the day in

question, the latch on that right-hand door was not working; it was out of order, wasn't it?

"A  The latch on the door would catch at the safety.

"Q  It was out of order, it wasn't working—

"MR. SADLER: Object.

"THE COURT: Overrule.

"MR. SADLER: Except.

"Q  And it had been in that condition for some time?

"A  Several days.

"Q  And you had gone so far as to get a new latch?

"A  Yes.

"Q  And had the new latch on the premises, but had not put it on, is that right?

"A  Yes, sir."

At some disputed time, at the beginning of or during the journey, Copeland undertook to fasten the right door with a chain. Evidence for appellants tended to show that the door was fastened with the chain before the wrecker left Kemp's garage. Evidence for plaintiff tended to show that the chain was not placed on the door until after the wrecker had proceeded several miles to the highway, and that intestate had no knowledge of a defective latch until that later time.

On the highway, the wrecker met a car driven by defendant Gamble. Evidence tends to show that Gamble drove his car so that it struck the left side of wrecker and knocked the wrecker over on its right side. The wrecker was stopped, or almost stopped, and on the right side or shoulder of the highway at the time of collision. There is no insistence that Copeland was negligent in the manner of driving the wrecker.

Copeland and intestate's brother did not suffer severe injury. Intestate suffered injuries which caused his death a few days later. After the collision, intestate was pinned under the right side of the wrecker. As to intestate's position, one witness testified as follows:

"Q  Was he fully or partially out of the wrecker?

"A  Partially. He was about halfway under there.

"Q  Was he inside or outside of the door?

"A  He was sticking about halfway out there and he was sticking between the door and the frame and through the window. I believe he was between the door and the frame, I couldn't be positive."

Intestate's brother testified that after the wrecker came to rest, intestate was pinned "down," and the right door of the wrecker "was bent all up. It was open."

## Assignment 18.

This assignment recites as follows:

"18.  The Circuit Court erred in refusing to charge in its oral charge, at the request of this Appellant before the jury retired, on the issue of assumption of risk of Appellee's intestate, to which refusal Appellant excepted. (Tr. p. 132)."

At page 132 of the transcript, the following appears:

"Are there any exceptions to the Court's Oral Charge? What says counsel for the plaintiff?

"MR. PARSONS: We have no exceptions.

"THE COURT: What says counsel for Kemp and Copeland?

"MR. SADLER: I believe we asked for charges on assumption or (sic) risk. We would like to except to those.

"THE COURT: Well, yes. In my refusing them, you have got that.

"MR. SADLER: I just wanted to be sure I was protected.

"THE COURT: I am sure that in refusing the charge; that is not to the oral charge, that is to some written charges.

"MR. SADLER: Well, just the point that the jury was not charged on that issue.

"THE COURT: No, no, I didn't charge on that issue. No, No. Is there any other—"

Assignment 18 makes no reference to the refusal of any charge requested in writing by appellants. The assignment and the transcript, as quoted above, compel us to conclude that appellants are here complaining of the court's action in refusing to instruct the jury in accordance with a request which appellants made orally and not in writing. It has been held by this court that it will not reverse a judgment of the circuit court for its refusal to give a charge asked, unless it appear that such charge was put in writing as the statute provides. Jacobson v. State, 55 Ala. 151; Green v. State, 66 Ala. 40. The declination of a trial court to instruct the jury in consonance with, or on the subject of, verbal suggestion by counsel presents no matter for review on appeal, even though the suggestion was well founded. Mullins v. Lemley, 205 Ala. 593, 88 So. 831. See also: Brock v. State, 235 Ala. 304, 178 So. 548; Krasner v. Gurley, 248 Ala. 686, 29 So.2d 224; Keel v. Weinman, 266 Ala. 684, 98 So.2d 611; § 273, Title 7, Code 1940. Assignment 18 is without merit.

*Assignment 4.*

Assignment 4 is that the court erred in refusing to give at appellants' request the following written charge:

"II. I charge you gentlemen of the jury if you are reasonably satisfied

from the evidence that the allegedly defective door was known to Clint Jackson or that it should have been known to a reasonably prudent man under like circumstances and that Clint Jackson had an opportunity to elect whether or not to ride in said wrecker and that if he with actual or constructive knowledge of the defective condition and of the forseeable (sic) results of said condition, elected to ride in said vehicle he assumed the risk of any injuries proximately resulting from said defect and that if he did suffer injuries proximately resulting from said defects you cannot return a verdict against Charles W. Kemp, doing business as Kemp's Garage, and Fred Eddie Copeland and in favor of the plaintiff."

Without considering other possible defects, we are of opinion that Charge II is erroneous because it omits the element of appreciation on the part of the plaintiff's intestate. Although the charge requires the jury to be reasonably satisfied that intestate had knowledge of the defective condition of the door and the foreseeable results thereof, the charge fails to require that the jury be reasonably satisfied that intestate appreciated the danger. This court has said:

"In the case of McGeever v. O'Byrne, 203 Ala. 266, 269, 82 So. 508, the phrase 'assumption of risk' is fully considered, and it is there noted that the expression is sometimes loosely applied to cases where there was no contractual relation between the parties. The rule declared is, that it must be confined to cases where the plaintiff knew and appreciated the danger assumed, and with such knowledge and appreciation voluntarily put himself in the way of it. This is the rule that is followed in this jurisdiction. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 636, 138 So. 231; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 575, 119 So. 610; Dunklin v. Hanna, 229 Ala. 242, 156 So. 768." Edwards v. Southern Ry. Co., 233 Ala. 65, 66, 169 So. 715, 106 A.L.R. 1133.

In Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, 1946, Vol. 4, Part 1, § 2515, page 721, the writer says:

"So, if a guest, with knowledge of the defective condition of the car and appreciation of the hazards involved, voluntarily assents to ride therein, he will be precluded from recovery for injuries in an accident resulting from the defects of which he has then been cognizant, alike whether such defects consist of bad brakes, absence of chains, or defective tires or headlights."

While there is a distinction between contributory negligence and assumption of risk, Foley v. Pioneer Min. & Mfg. Co., infra, certain elements are common to both. With respect to contributory negligence this court has said:

"The instant plea was that of contributory negligence, and the mere knowledge of the offending instrumentality or condition does not constitute contributory negligence; there must have been an appreciation or consciousness of the danger that may result from the act or the failure thereof causing and resulting in the injury. (Citations Omitted.)" Mackintosh Co. v. Wells, 218 Ala. 260, 264, 118 So. 276, 279.

■ So for the defense of assumption of risk to apply, we think "there must have been an appreciation or consciousness of the danger" with which the risk is attended. Charge II fails to require such appreciation and was refused without error.

### Assignments 12 and 13.

These assignments take the point that the court erred in refusing the affirmative charge with hypothesis separately requested in writing by defendants Kemp and Copeland. Without extended discussion, we conclude that, inasmuch as Copeland was acting within the line and scope of his employment by Kemp, both Copeland and Kemp were liable or neither was liable.

These defendants assert that they were entitled to affirmative instructions for four reasons, to wit: (A) for that the evidence shows as a matter of law that intestate assumed the risk of the defective door and, therefore, no recovery can be had against appellants for his injury or death resulting from that defect; (B) for that the evidence shows as a matter of law that intestate was guilty of negligence which proximately contributed to his injury and that plaintiff was, therefore, barred from recovery against appellants for injury caused by their simple negligence; (C) for that the evidence was insufficient to show that intestate was not a guest subject to the guest law, § 95, Title 36, Code 1940, and so barred from recovery against appellants for their simple negligence; and (D) for that the only negligence charged against appellants, namely, transporting intestate in the wrecker with a defective door latch, was not shown to be the proximate cause of intestate's death.

■ (C) It seems appropriate to consider first the contention that intestate was a guest under § 95, Title 36, Code 1940, which has been construed in Blair v. Greene, 247 Ala. 104, 22 So.2d 834; Sullivan v. Davis, 263 Ala. 685, 83 So.2d 434, 59 A.L.R.2d 331; Klein v. Harris, 268 Ala. 540, 108 So.2d 425. The rule of those cases is that if the trip is for any benefit to the driver, conferred or anticipated, it is sufficient to take the case out of the guest statute, but a mere incidental benefit to the driver is not sufficient. The benefit to the driver must in some way have induced the driver to extend the offer to the rider, and the benefit must be material and tangible and must flow from the transportation provided.

The evidence for appellants was to effect that intestate was permitted to ride the wrecker at his own request and for his own benefit merely. This evidence would justify a finding that intestate was a guest and not entitled to recover for an injury caused by simple negligence of the driver or operator of the wrecker.

On the other hand, defendant Kemp admitted that intestate made a payment to Kemp for sending the wrecker to bring in intestate's car. Intestate's brother, Charles, testified with respect to intestate's riding in the wrecker as follows:

"Q  I will ask you if you didn't ask Mr. Kemp if you could go, and if it would be all right?

"A  He said it would be best for us to go to see about things.

"Q.  Didn't you ask him if it would be all right for you to go?

"A  We asked him did we have to go, and he said it would be best for us to go.

"Q  My question is, didn't you ask Mr. Kemp if it would be all right for you to go?

"A  We asked would we have to go. We didn't ask him to go.

"Q  You didn't ask him if it would be all right for you to go?

"A  That's right.

"Q  He told you you didn't have to go?

"A  No, sir, he told us it would be best to go so he wouldn't be responsible for anything taken off on account of the automobile setting alongside the highway."

We are of opinion that the jury could find that the carriage of intestate conferred a benefit on defendant, Kemp, which was material and tangible under the above stated rule and that, under the statute, intestate was not a guest but was a passenger to whom appellants owed a duty which has been stated as follows:

" '3.  The duty of the owner and driver of an automobile to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of the method of travel, but he must exercise the care and diligence which a man of reasonable prudence engaged in like business would exercise for his own protection and the protection of his family and property.' "  Galloway v. Perkins, 198 Ala. 658, 659, 73 So. 956.

We do not understand appellants to contend that the jury could not find that transporting intestate in the wrecker with the defective door latch constituted a breach of the duty of reasonable care owed by appellants to intestate, if intestate was ignorant of the defect and appellants had knowledge of it. We hold that the jury could find (1) that intestate was not a guest under the guest statute, and (2) that knowingly transporting intestate in the wrecker with the defective door latch was negligence on the part of appellants.

■ (A) The familiar rule is that when the affirmative charge is refused and the party who requested the charge appeals, the entire evidence is viewed in the light most favorable to the opposite party, and where reasonable inferences may be drawn adverse to the party who requested the charge, the action of the trial court in refusing the charge must be affirmed. Louis Pizitz Dry Goods Company v. Harris, 270 Ala. 390, 118 So.2d 727.

We are of opinion that the evidence reasonably supports an inference that intestate did not voluntarily, with full knowledge and appreciation of the danger, assume the risk of the defective door latch.

Evidence for appellants is to effect that the chain was applied to the door before the wrecker left the garage. Appellants contend that under that view of the facts, intestate assumed the risk.

Evidence for plaintiff, however, is to effect that the chain was not placed on the door until after the wrecker had traveled out to the highway and rain had commenced to fall. The brother of intestate testified that at that time, the defendant Copeland "taken a chain and tied the door"; it was

"A trace chain"; it was "looped" around the door handle; the other end of the chain was "tied" around a metal rod back of the seat; at that time the window glass was not all the way up; but the chain did not remain in that position. Intestate's brother testified as follows:

"Q Did that chain stay in that condition as you went on up the road?

"A No, sir, it didn't.

"Q What change was made in it, if any?

"A When we got up the road a little piece it started to raining harder, and we let all the windows all the way up. He let the window up and I held the chains in my hand.

"Q The chain had to go up above the glass?

"A Yes, sir.

"Q That meant the chain had to be longer in order to go up, is that right?

"A Yes, sir.

"Q Was the chain long enough after it went up over the glass after the glass was raised to come back down and stay on the metal rod behind the seat?

"A No, sir, it wasn't.

"Q But was the ends of the chain on the inside of the wrecker tied to anything?

"A No, sir.

"Q What held it?

"A I was holding it in my hand, sir.

"Q You were in the middle?

"A Yes, sir.

"Q Your brother was on the outside?

"A Yes, sir.

"Q Do you remember whether the chain come in front of him or behind him?

"A Behind him, sir.

"Q Whose idea was it to change the chain from the position it was first in when it was tied down to the metal rod behind the seat?

"A You say whose idea it was?

"Q Yes.

"A Mr. Copeland's.

"Q You got the window glass rolled up and the chain pulled over it and you would hold the chain?

"A Yes, sir.

"Q Now, did you then proceed on in the direction where the car was?

"A Yes, sir.

"Q Did you ever get there?

"A No, sir."

We understand that intestate's brother was holding the chain, as thus described, at the time of collision.

Clearly, intestate did not assume the risk at the time he left the garage in the wrecker if, at that time, the chain was not affixed to the door and intestate had no knowledge of any defect in the door latch.

Appellants argue, however, that intestate accepted the risk when he continued to ride in the wrecker after the chain had been placed on the door out on the highway. They state in brief:

"We hardly see how it can be the subject of debate that intestate did but accept the risk of the defective door latch while the wrecker was on the highway; he knew of the defect, participated in the chain arrangement, was as competent to know of the danger of the simple chain arrangement as was the appellant Copeland. Intestate appreciated the danger, if any, or had the

means of appreciating its danger.· Further intestate was in equal position with appellant Copeland to foresee the liklihood (sic) of the unfortunate result, and, notwithstanding, he continued to ride in the wrecker and must be regarded as 'volens.' The question is still the reasonableness of the conduct of the appellants and proximate cause, and these facts affirmatively show that appellants were guilty of no negligence, taking into account the knowledge and consent of appellee's intestate. It should not be confused that the burden to show the negligence was on appellee, and that the burden was not on the appellants to show the actuality of the knowledge and consent."

Appellants' argument, as we understand it, is that, when the chain was placed on the door, intestate was bound to leave the wrecker or be deemed to have assumed the risk of injury resulting from the defective door latch.

■ An essential element of assumption of risk is that plaintiff must have exposed himself voluntarily.

"* * * Moreover, the doctrine of assumed risk is based upon voluntary exposure to danger and is applicable only in cases where the injured person might reasonably elect whether or not he should expose himself to the peril. If the exposure of the injured party to the peril was due to his inability reasonably to escape after he became, or should have become, aware of the danger, the doctrine does not apply. * * *" 38 Am.Jur., Negligence, § 173.

"* * * The doctrine, accordingly, can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger; and it has no application where a continued exposure to risk is due to a lack of reasonable opportunity to escape after the danger is appreciated, or is the result of influence, circumstances, or surroundings which are a real inducement to continue. * * *" 65 C.J.S. Negligence § 174.

■ If intestate had knowledge and appreciation of the danger, and also had a reasonable choice whether he should continue to ride in the wrecker or get out on the highway in the rain, then he might be deemed to have "voluntarily" assumed the risk. On the other hand, if intestate did not have a reasonable choice, then his assumption of the risk could not be deemed voluntary. We think the evidence permits the latter inference and that we cannot say as a matter of law that intestate voluntarily assumed the risk.

(B) This court has said: "* * *. There is a well-defined distinction between assumption of risk and contributory negligence. * * *" Foley v. Pioneer Min. & Mfg. Co., 144 Ala. 178, 182, 40 So. 273, 274. Concerning the doctrine of volenti non fit injuria, this court has quoted with approval as follows:

"* * * 'Harm suffered by consent is not, in general, the basis of a civil action. This is the meaning of the maxim, "volenti non fit injuria."' Jaggard on Torts, 199. * * *" McAdams v. Windham, 208 Ala. 492, 493, 94 So. 742, 743, 30 A.L.R. 194.

We are not to be understood as disregarding the distinction between the two defenses. What has been said, however, with respect to the evidence supporting a reasonable inference that intestate did not assume the risk, applies also to contributory negligence. We·are of opinion that the evidence reasonably supports an inference that intestate was not guilty of a failure to exercise reasonable care for his own safety. The issue of contributory negligence was submitted to the jury without error.

(D) Appellants argue that the only inference supported by the evidence is that, even if appellants be held guilty of negligence in transporting intestate with a defec-

tive door latch, such negligence of appellants was not the proximate cause of the injury, for the reason that the negligence of defendant Gamble in driving his car so as to strike the wrecker and knock it over was an independent, intervening cause that could not have been foreseen by appellants as a natural and probable consequence of their negligence in transporting intestate with a defective door latch, citing Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474.

In the Courson case, this court held that the negligence of the defendant railroad in maintaining a door in an improper condition was not the proximate cause of plaintiff's injury where the door was forced open by another passenger and glass from the door fell on and cut the plaintiff. The rule as to proximate cause was stated as follows:

> "* * * The many decisions of this court dealing with negligence as the proximate cause, when some independent agency has intervened and been the immediate cause of the injury, hold the party guilty of negligence in the first instance is not responsible, unless at the time of the original negligence the act of the independent agency could have been reasonably foreseen. That is to say, if the act of the independent agency could have been reasonably foreseen, the causal chain is not broken. If the injury resulted from an independent, intervening, efficient cause, not reasonably to be anticipated, to wit, the act of a third person, the negligence shown, if any, was not the proximate cause of the injury. * * *" 234 Ala. at page 277, 174 So. at page 476.

As it appears to us, the evidence in the instant case reasonably supports an inference that the injury sustained by intestate, which caused his death, may have resulted solely from the force of Gamble's car when it struck the wrecker; that is, the wrecker door may have been forced open solely by the blow, and not because the latch was defective.

On the other hand, we think it could also be reasonably inferred that the defective condition of the latch concurred with the force of the blow from Gamble's car, so that the opening of the door of the wrecker was not caused solely by the force of the blow from Gamble's car, but also by the defective latch, and that, without the defect in the latch, the door would not have opened and intestate would not have suffered the injury which caused his death.

Plaintiff's contention is that the defect in the latch was a concurring cause of the opening of the door; that the opening of the door caused intestate to fall or be thrown out of the wrecker and suffer injury which caused his death; and that, because appellants were negligent in transporting intestate in the wrecker with the defective latch, appellants are liable for the consequence of the defect, namely, intestate's death.

This court has said:

> "In line with our decisions on this subject is the statement: 'As regards proximate cause * * * the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. Accordingly, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault —such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question.' 38 Am. Jur., § 62, p. 714." Sullivan v. Alabama Power Co., 246 Ala. 262, 268, 20 So.2d 224, 228.

■ The evidence here supports an inference that a danger reasonably to be foreseen, as a natural result of the defective door latch, is the danger that the door might open and a person riding in the wrecker

might fall or be thrown out of the door and injured. It was not necessary that the particular consequence of appellants' negligence with respect to the defect could have been foreseen by appellants. It was sufficient that the injuries sustained by intestate were the natural, although not the inevitable result of appellants' negligence respecting the latch. Intestate's being thrown out the door was an injury likely to ensue from the negligence of appellants, or, at least, the jury could reasonably so infer.

In Courson's case, glass falling out of the door was not the natural or likely consequence of the door's jamming and, therefore, injury from the falling glass was not reasonably to be anticipated as a foreseeable result of negligence in allowing the door to become defective and jammed or stuck. In the instant case, a passenger's falling or being thrown from the wrecker was a natural and likely consequence of the defective door latch and, therefore, injury to the passenger from so falling was reasonably to be anticipated as a foreseeable result of negligence in maintaining the defective latch. It is difficult to see how a door's becoming jammed or stuck would cause glass to fall out of the stuck or jammed door of the railroad coach. It is not difficult to see how a defective door latch would cause a passenger to fall or be thrown through the opened door of the wrecker.

We are not persuaded that the evidence requires us to hold, as a matter of law, that appellants' neglect, in knowingly transporting intestate with the defective door latch, was not a concurring, proximate cause of intestate's death. The affirmative charge with hypothesis requested by appellants was refused without error.

The judgment is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.