406 So.2d 854 (1981)
CATERPILLAR TRACTOR COMPANY, a corporation
v.
Helen FORD, as Dependent Widow of Leonard Lane Ford, Deceased.
79-419.
Supreme Court of Alabama.
September 11, 1981.
Rehearing Denied October 9, 1981.
*855 Robert D. Norman of Norman, Fitzpatrick & Wood, Birmingham, for appellant.
Lanny S. Vines of Emond & Vines, Birmingham, for appellee.
SHORES, Justice.
This is a products liability case. The suit was brought by Helen Ford, the widow of L. L. Ford, who was killed in an unwitnessed strip mining accident on May 30, 1972, when the Caterpillar D8H tractor he was operating rolled over three-fourths of a turn and crushed him to death.
At the time of the accident, the decedent had attempted to traverse a 42 slope at a 30 downward angle. Tracks indicated that he had tried once before to cut down the slope, had started to slide, and had backed up. There was conflicting evidence whether the blade of the tractor was up or down at the time of the roll.
Beginning in July, 1970, Caterpillar manufactured a roll bar (known as "Roll Over Protective Structure" or "ROPS") for the D8H tractor, which was sold as optional equipment in 1972. The D8H tractor in the accident was manufactured September 24, 1970, and was not equipped with a ROPS.
Ford's widow sued Caterpillar along with the D8H tractor distributor, Thompson Tractor Company, and A. E. Burgess, an executive officer of the tractor's corporate owner, contending that the absence of roll-over protection rendered the D8H tractor defective within the meaning of the Alabama Extended Manufacturers' Liability Doctrine.
Caterpillar asserted a general denial and special defenses of contributory negligence and assumption of risk. Caterpillar's motions for directed verdict at the conclusion of the plaintiff's case and at the conclusion of all the evidence were denied.
Before the case was submitted to the jury, the parties agreed that separate verdicts could be entered. The jury returned a verdict in favor of Thompson Tractor but against A. E. Burgess and Caterpillar for the sums of $150,000 and $350,000, respectively. Caterpillar's motions for judgment notwithstanding the verdict or in the alternative for a new trial were denied. Caterpillar appealed. Burgess did not.
In order to establish liability under the Extended Manufacturers' Liability Doctrine, a plaintiff must show:
(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) Showing these elements, the plaintiff has proved a prima facie case although
*856 (a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.
Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976).
In addition to the general denial defense, the defendant may also affirmatively raise the negligent conduct of the plaintiff in using the product, as well as the defense of assumption of risk. Casrell, supra.
On appeal, Caterpillar asserts the court erred in denying its motion for a directed verdict, based on the grounds that: (1) Plaintiff failed to prove that Caterpillar's failure to equip the D8H tractor with a ROPS rendered the D8H tractor unreasonably dangerous or defective within the Extended Manufacturers' Liability Doctrine; and (2) Plaintiff failed to prove that, at the time of the accident, the decedent was using the D8H tractor in an intended or reasonably foreseeable manner. We cannot agree.
A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Deal v. Johnson, 362 So.2d 214 (Ala.1978). In considering a motion for directed verdict, the court must apply Rule 50(e), ARCP, under which "a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, ... or a scintilla in support of the theory of the complaint ...." Dixie Electric Company v. Maggio, 294 Ala. 411, 318 So.2d 274 (Ala.1975).
In addition, the trial court must view the entire evidence, and all reasonable inferences which a jury might have drawn therefrom, in the light most favorable to the non-moving party. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Vintage Enterprises, Inc., v. Cash, 348 So.2d 476 (Ala.1977). Also, this Court's function in reviewing a motion for a directed verdict is to review the tendencies of the evidence most favorably to the non-movant, regardless of a view we may have as to the weight of the evidence, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Beloit Corp. v. Harrell, 339 So.2d 992 (Ala.1976).
There was that scintilla of evidence present in both points to justify the trial court's actions.
There was no evidence contradicting a stipulation by the parties that the mining safety officer would have testified that the tractor rolled only three-fourths of a turn. The plaintiff introduced expert testimony that if the tractor had been equipped with a ROPS, the three-fourths of a turn would have caused no serious injury or death to the driver. Caterpillar's own expert testified that he knew of no serious injury or death from a three-fourths turn where a ROPS was used.
There was evidence that Caterpillar had knowledge of the potential of the D8H tractor to roll over and that a ROPS was effective in preventing injury or death in such accidents. It was also established that Caterpillar, as of July, 1970, offered a ROPS as optional equipment but did not install it as a standard feature on the D8H tractor. There was evidence from which a jury could conclude that the failure to include some protection against roll-overs rendered the tractor defective. On this issue and on the question of whether the deceased was using the D8H in an intended or reasonably foreseeable manner, the evidence disclosed that Caterpillar's engineers knew that its equipment would be operated on "steep mountainsides with the ever present danger of sliding off or overturning." In fact, Caterpillar's patent application for ROPS states that "earth moving vehicles are frequently operated on steep hillsides wherein lateral tipping and rolling over is a real danger."
We conclude that both issues were for the jury and that the evidence supports a finding by it that the tractor was defective.
*857 Caterpillar argues that it is unjust to hold it responsible for not installing the ROPS when they were offered as optional equipment. We cannot agree. If the tractor was defective in the condition in which it was sold, liability for resulting injury cannot be escaped by showing that the customer could have but did not buy an item which would have removed the defect.
Caterpillar next asserts that the trial court erred in not holding as a matter of law that the plaintiff was contributorily negligent or had assumed the risk.
The burden of proving a plea of contributory negligence in a case such as this remains with the defendant. The question of whether the plaintiff is guilty of contributory negligence as a matter of law, one for the court to decide, arises only when the facts are such that all reasonable men must draw the same conclusion therefrom, and the question is for the jury when, under the facts and circumstances, reasonable minds may fairly differ upon the question of negligence vel non. Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972), Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928).
Mere knowledge that the D8H did not have a ROPS or that the D8H was dangerous without a ROPS does not establish contributory negligence. It is also necessary to show that the driver appreciated the danger under surrounding conditions and circumstances and that he acted unreasonably with that knowledge and appreciation.
While there is a distinction between contributory negligence and assumption of risk, certain elements are common to both. One such element is that there must have been an appreciation or consciousness of the danger with which the risk is attended. Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187 (1962).
The record does not show that Caterpillar established without contradiction that the driver appreciated the danger of his acts under the surrounding conditions and circumstances. There was testimony from several employees that traversing such slopes was a routine and common practice by the mining tractor operators. In fact, the chief safety officer of the mining company stated that he had seen operators at the mining site traverse much steeper embankments than the one Ford was going down. The trial judge properly submitted the issue of contributory negligence to the jury. The evidence would have supported a verdict in favor of Caterpillar on the issue. It equally supports a verdict against it.
The next issue on appeal goes to the court's charge to the jury. Caterpillar argues that the charge was inadequate in defining the terms "defect" and "unreasonably dangerous."
The trial judge charged the jury in part as follows:
First, the plaintiff's claim against Caterpillar is on what is known as Extended Manufacturers Liability Doctrine or Law. And the plaintiff says in effect that Caterpillar is engaged in the business of manufacturing, supplying, selling or marketing the tractor in question, that the defendant did manufacture, supply, sell or market the tractor which was in a defective condition, unreasonably dangerous when applied to its intended use or reasonablereasonably foreseeable that it would be used in the usual and customary manner, that the deceased while using the tractor in its usual and customary manner, as it was intended to be used, as a direct result of the defendant's placing on the market a tractor which was unreasonably dangerous, the tractor was in a defective condition at the time it was placed on the market by the defendants, that is Caterpillar.
Caterpillar argued to the trial court that its charge was inadequate in that it
... failed to charge the jury in regard to whether roll-over protectionthe failure to provide roll-over protection is or is not a defect or is or is not something that would render a D8H unreasonably dangerous for its intended purpose when used in the intended manner.
Caterpillar continued in its argument to the trial court:

*858 We say and we urge on the Court again that the failure to provide a D8H with roll-over protection does not render this D8H defective, nor unreasonably dangerous and that the Court's failure to charge in that regard is contrary to the law.
The Court: All right, sir. Do you want me toare you asking for any explanatory charges, other than what you've said? That's it?
Mr. Norman: Explanatory, no, sir. We are not asking for any explanatory charge....
The court refused Caterpillar's requested charges numbered 13 and 14, which are as follows:
13. I charge you as a matter of law that failure to provide roll-over protection in the D8H involved in this case is not a defect.
14. I charge you as a matter of law that failure to provide roll-over protection on the D8H involved in this case would not render it unreasonably dangerous for its intended purposes when used in the intended manner.
Caterpillar asserts that the refusal of these charges coupled with the failure to charge the jury in its oral charge that the failure to provide roll-over protection did not constitute a defect nor render the D8H unreasonably dangerous constitutes reversible error. Again, we disagree.
Whether the omission of some roll-over protective device on the D8H rendered it defective or unreasonably dangerous when put to its intended use was the very issue before the jury. To instruct the jury that the omission of a ROPS did not constitute a defect as a matter of law would have had the same effect as directing a verdict for Caterpillar. Under the facts in this case, Caterpillar was not entitled to a directed verdict, and the court did not err to reversal in refusing charges 13 and 14. Although the court's oral charge is somewhat general and, under the facts of this case, might have been improved by including instructions along the lines set out in footnote 2, Casrell, there is no error to reverse under ARCP 51.
The jury could have found under the evidence that the state of the art at the time the tractor here was sold dictated the inclusion of some kind of protective roll-over device. In that regard, the record shows:
Plaintiff introduced evidence which showed that in 1958 the U. S. Army Corps of Engineers, after investigating ROPS's for heavy equipment, concluded that ROPS's were very effective safeguards for tractors and other heavy equipment that had to work on rough terrain and that one would save the operator's life in the event of an upset. As a result of this study, within a few years the Army Corps of Engineers required that ROPS's be installed on all heavy equipment.
In 1961, the National Safety Council, of which Caterpillar was a member, issued a publication which urged that sufficient overhead protection be provided on such machines as bulldozers, tractors, and motor graders in order to prevent injury to the operator in the event of a turnover.
In 1965, the State of California passed a law requiring that machinery such as the D8H be equipped with a ROPS.
Also there was an article admitted into evidence written before 1970 by John Arnt of the John Deere Company, which detailed the many methods that had been tried to prevent tractor overturns and concluded that a ROPS was the best protection for the operator in the case of an overturn. The article recommended that all future tractors should be equipped with a ROPS as standard equipment.
There was evidence which showed that, even though Caterpillar may not have agreed with these studies and actions, it was aware of them.
Caterpillar argues that there were no OSHA (federal Occupational Safety and Health Administration) standards or other federal government regulations requiring ROPS's in 1970. Manufacturers of unreasonably dangerous and defective products cannot escape liability for injury resulting therefrom if standards in the industry dictated the inclusion of some protection *859 against injuries likely to occur while using the products for their intended purposes.
The law does not, and should not, impose 1980 standards on 1970 activity. However, it does and should impose 1970 standards within the industry on 1970 activity.
While it is true that the Court's oral charge is somewhat general and does not specifically define for the jury what constitutes a defective condition, Caterpillar offered no explanatory charge or alternative which would have more specifically defined the term and, in fact, declined to do so after the court asked if it wanted to offer explanatory charges. We cannot say that reversible error is shown in this regard. See ARCP 51.
Finally it is argued that the trial court erred by refusing to grant a new trial or ordering remittitur because the verdict against Caterpillar was so excessive in comparison to that returned against Burgess that it demonstrated bias or prejudice by the jury.
The Alabama Extended Manufacturer's Liability Doctrine includes the action for "wrongful death" and damages are to be awarded that will punish the tortfeasor for the act and deter him and others from similar future conduct. Casrell, supra. The amount of damages awarded is within the sound discretion of the jury. Beloit, supra. It should be noted that Caterpillar agreed at trial that the jury could return separate verdicts.
In Carlisle v. Miller, 275 Ala. 440, 155 So.2d 689 (1963), this Court stated:
The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much.... [A] remittitur or a new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict has been reached on account of bias, passion, prejudice, corruption, or other improper motive or cause.... And only where the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case should the court interfere and set the verdict aside ...; also, where the trial court refuses to grant a new trial because he does not believe the verdict is excessive the favorable presumption attending the jury's verdict is thereby strengthened.
275 Ala. at 444, 155 So.2d 689.
By this standard, we cannot say that under the circumstances of this case, the verdict was so excessive as to warrant its being set aside.
The judgment is affirmed.
AFFIRMED.
FAULKNER, JONES, BEATTY, and ADAMS, JJ., concur.
TORBERT, C. J., and MADDOX, ALMON and EMBRY, JJ., dissent.
TORBERT, Chief Justice, and MADDOX, ALMON and EMBRY, Justices, dissenting.
The evidence is without dispute that a ROPS was available to the purchaser of the D8H when the machine was purchased. The law is that if knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those options appropriate to the intended use rests upon the purchaser. The purchaser is obviously the party best able to exercise the intelligent judgment to make the trade-off between cost and function, and the purchaser should bear any responsibility if the decision on optional safety equipment presents an unreasonable risk to users. To hold otherwise casts the manufacturer and supplier in the role of insurers, who must answer to injured parties in any event, because the purchaser, for economic or other reasons, elected not to purchase available safety options. See, Viss v. Tenneco, 64 A.D.2d 204, 409 N.Y.S.2d 874 (1978). Because the majority holds that the jury could find that the tractor was defective in the condition in which it was sold, we must respectfully dissent. We are of the opinion that the trial court, as a matter of law, should have held that Caterpillar's *860 failure to equip the tractor with a ROPS did not render the tractor unreasonably dangerous or defective within the meaning of Alabama's extended manufacturer's liability doctrine, and that the trial court should have granted Caterpillar's motion for a directed verdict.