Andy TURNER, Plaintiff,

v.

C.E. MINERALS, INC.,
et. al., Defendants.

No. Civ.A. 98–D–1195–S.

United States District Court,
M.D. Alabama,
Southern Division.

Oct. 5, 1999.

Michael J. Gamble, Amy Shumate, Dothan, AL, for plaintiff.

John D. Herndon, Christopher Rodgers, Birmingham, Alabama, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant C.E. Minerals' and Defendant Mullite Company's ("Mulcoa") Amended Motion For Final Summary Judgment ("Mot."), filed June 22, 1999, along with their Memorandum In Support Of C.E. Minerals, Inc.'s Motion For Final Summary Judgment ("Def.s' Mem."), filed June 17, 1999. Plaintiff Andy Turner ("Plaintiff") filed a Brief In Opposition To Defendant's Motion For Summary Judgment, which the court construes as a Response ("Pl.'s Resp."), on July 15, 1999. Defendants filed a Reply ("Repl.") on July 22, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be denied.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about September 26, 1996, Plaintiff Andy Turner suffered severe injuries as a result of an on the job accident he had while operating a Komatsu D58P–I bulldozer ("D58P"). (Am.Compl. ¶¶ 9, 11.) Because of this accident, Plaintiff has suffered from numerous ongoing medical problems and was forced to stop working. (Turner Dep. at 144.)

Plaintiff began working for his brother's company, Turner Drilling Company, in 1982. (*Id.* at 29.) From 1982 until he stopped working in 1996, Plaintiff often operated heavy equipment, particularly bulldozers. (*Id.* at 30.) His job was to clear roads through wooded areas for drill trucks. (*Id.* at 31.) This involved pushing dirt, rocks and trees with a bulldozer. (*Id.*) For his work, Plaintiff used different bulldozers supplied by Defendants to his employer, Turner Drilling Company. (Am.Compl. ¶ 11; Turner Dep. at 30, 32, 34, 40.)

None of the bulldozers operated by Plaintiff had a full screen surrounding the driver. (*Id.* at 32, 35, 36.) That is, the bulldozers used by Plaintiff all had an opening through which objects could enter the bulldozer and strike the operator. (*Id.*) In his first five or six years of operating the bulldozer, Plaintiff experienced few problems with debris entering the operator area. (*Id.* at 39.)

By the late 1980s, however, Plaintiff began to realize that the bulldozers were not completely safe without a full cage around the operator area. (*Id.*) The problem, Plaintiff noticed, was that debris could enter the operator area and either injure or distract the operator. (*Id.* at 38.) Plaintiff began complaining about the lack of a

full cage on the bulldozer in the late 1980s. (*Id.* at 41.) In 1989 or 1990, Plaintiff told his brother that he needed a full cage to operate the bulldozer safely. (*Id.* at 41–43.) He also told Robin Dozer, a representative of Defendant Mulcoa. (*Id.*) Plaintiff remembers that Mr. Dozer said Defendant Mulcoa would do something about the situation. (*Id.* at 45.) At the time, Plaintiff operated a D5 bulldozer. (*Id.*) Within a month of when Plaintiff complained, Defendant Mulcoa added screens on the sides of the K5 bulldozer. (*Id.*) Plaintiff continued to operate the K5 bulldozer until the beginning of 1995. (*Id.* at 46.) He continued to complain regularly, though, about not having a full cage on the K5. (*Id.* at 49.) He registered his complaints with Mulcoa representatives whenever possible. (*Id.* at 51, 53–54.)

In late 1994 or early 1995, Defendant Mulcoa bought a new D58P Komatsu bulldozer for Plaintiff to operate. (*Id.* at 46.) While Defendant Mulcoa was considering a new bulldozer, Plaintiff reiterated his concerns to the Mulcoa representatives about having a full cage for protection. (*Id.* at 58.) Plaintiff and Plaintiff's brother were under the impression that Defendants agreed to purchase a bulldozer with a full cage. (*Id.* at 61–62, 82.) Despite Plaintiff's complaints, however, Defendant Mulcoa purchased the D58P, which did not have a full cage. (*Id.* at 62.)

After its delivery in early 1995, Plaintiff operated the D58P despite the fact that it did not have a full cage. (*Id.* at 63.) Plaintiff complained to Jerry Gardner of Mulcoa that the new bulldozer was not safe. (*Id.* at 63–64.) Plaintiff told Mr. Gardner that Plaintiff felt at risk of serious injury or death. (*Id.* at 64.) Mr. Gardner said he would take care of the problem. (*Id.*) Defendants arranged to have column posts installed on the D58P to make it safer. (*Id.*) Plaintiff still felt at risk, though, and continued to complain to Defendants up until the time of his accident. (*Id.* at 66–67.)

Plaintiff felt as though he had no choice but to continue operating the D58P, even though it did not have a full cage. (*Id.* at 81.) Because the D58P was not safe, he took precautions for his own safety. (*Id.* at 69.) Plaintiff was extra careful when pushing trees which were more likely to break and fall back onto the bulldozer. (*Id.* at 68.) Despite Plaintiff's precautions, however, he was injured on or about September 26, 1996. (Am.Compl. ¶ 11.) On that day, Plaintiff was pushing over what he thought to be a live pine tree with the D58P. (Turner Dep. at 93.) Plaintiff soon discovered the tree was dead when the top of the tree fell onto the bulldozer and debris entered the operator area. (*Id.* at 93, 112.) The impact of the tree startled and distracted Plaintiff and he instinctively raised his hands to protect his face. (*Id.* at 94, 112.) This caused Plaintiff to drive over the stump of another tree. (*Id.* at 94.) The bulldozer drove up onto the stump and then fell off, severely jarring Plaintiff. (*Id.* at 118.) Plaintiff continued to operate the bulldozer for a few minutes before stopping because of pain in his back and legs. (*Id.* at 125.)

A few days later, Plaintiff went to see a doctor. (*Id.* at 128.) Though Plaintiff worked for a short period of time following the accident, Plaintiff's doctor eventually told him that he had to quit working. (*Id.* at 144 145.) Since that time, Plaintiff has not been able to do any physical work. (*Id.* at 146.)

Plaintiff filed this action on September 25, 1998. In his Complaint, Plaintiff alleges that he suffered injuries as a result of Defendants' negligence or wantonness. (Am.Compl. ¶¶ 11–13.) On June 17, 1999, Defendants filed their Motion For Final Summary Judgment. With the aforementioned standards in mind, the Court is of the opinion that there exist genuine issues of material fact in dispute and that Defendants are not entitled to judgment as a matter of law.

## IV. DISCUSSION

In their Motion For Final Summary Judgment, Defendants argue that they neither owed nor breached a duty to Plaintiff. (Def.s' Mem. at 5, 7.) Additionally, Defendants assert the two affirmative defenses of assumption of risk and contributory negligence. (*Id.* at 8, 13.)

### A. Duty

■ As stated before, Plaintiff brings claims of negligence and wantonness. In order to prove negligence, a plaintiff must show that the defendant breached an existing duty, causing damage to the plaintiff. "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." *Thompson v. Mindis Metals, Inc.*, 692 So.2d 805, 807 (Ala.1997) (citations omitted). "A legal duty arises either from the common law or from a statute." *Id.*

■ Whether a duty arises in a particular case is typically a question of law. *Sungas, Inc. v. Perry*, 450 So.2d 1085, 1089 (Ala.1984). However, when the facts upon which the existence of a duty depends are disputed, the question of whether a duty exists is appropriate for the trier of fact. *See City of Opp v. Garner*, 624 So.2d 1346, 1350 (Ala.1993).

Defendants contend they are not liable for negligence because they owed no duty, express or implied, to provide a safe work place to Plaintiff.[1] (Def.s' Mem. at 5.) First, Defendants claim they are not Plaintiff's employer, but only supplied bulldoz-

ers to Plaintiff's employer. (*Id.* at 5–6.) Second, Defendants note that they were only obligated to provide a bulldozer, not a bulldozer with a full cage around the operator's area. (Reply at 2.) Finally, Defendants argue that they never assumed a duty to provide a full cage. (*Id.* at 3.)

In support of their arguments, Defendants aver that no evidence exists of a contractual duty on the part of Defendants. (*Id.* at 2.) Additionally, Defendants note that they never explicitly told Plaintiff that Defendants would install a full cage on the D58P, thus never assuming any duty. (*Id.* at 3; Turner Dep. at 82.) Moreover, Defendants point out that Plaintiff implicitly states that any express duty of Defendants was limited to supplying a bulldozer for a particular use. (Reply at 2.) These facts, Defendants argue, must lead the court to conclude that no duty existed between Defendants and Plaintiff.

From these arguments, the court finds that Defendants, as the moving party, have met their initial burden of stating the basis for their motion and identifying those portions of the record which show an absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, Plaintiff is required by Rule 56(e) to "set forth *specific facts* showing there is a genuine issue for trial."[2] Fed.R.Civ.P. 56(e) (emphasis added); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Plaintiff alleges that Defendants were under a duty to provide a bulldozer fit for its intended use for Plaintiff to use in the course of his employment. (Pl.'s Resp. at

---

1. Defendants argue that Plaintiff must prove the existence of an implied obligation, and that he has not done so. (Def.s' Mem. at 2.) While the court notes that this will be Plaintiff's burden at trial, on summary judgment Plaintiff need only "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

2. In federal court, a plaintiff may not merely "rest on its pleadings" and survive summary judgment. Rule 56(e) states in part:
   When a motion for summary judgment is made ... an adverse party ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
   Fed.R.Civ.P. 56(e).

2.) In support of this assertion, Plaintiff offers significant evidence of the existence of a duty. First, Plaintiff alleges that on numerous occasions when Plaintiff complained to Defendants about the bulldozer, a representative of Defendants asserted that he would do something about the problem. (Turner Dep. at 41–43.) Second, it is clear that Defendants closely monitored Plaintiff's use of the bulldozer, requiring daily reports on mileage and hours of operation. (*Id.* at 52–53.) Third, Defendants consulted with Plaintiff about the type of bulldozer they should purchase in late 1994. (*Id.* at 58.) Lastly, Defendants undertook to make repairs and alterations on the bulldozer after Plaintiff complained about safety. (*Id.* at 64.)

■ After a careful review of the record in a light most favorable to Plaintiff, the court finds the issue of whether Defendants owed Plaintiff a duty is one best left to be determined by the trier of fact. After reviewing all of the facts and exhibits offered by the parties, the court finds that a reasonable jury could conclude that Defendants owed Plaintiff a duty of care. The exact relationship between Defendants and Plaintiff is unclear. Further, it is undisputed that Defendants were obligated to supply a bulldozer to Plaintiff's employer. (Reply at 2.) What is unclear on the record, and to be left to a jury, is to what extent this obligation to supply a bulldozer imposed a duty on Defendants.

### B. Breach

Once it is shown that a defendant owes a duty to a plaintiff, the plaintiff must show the defendant breached that duty. *See Flagstar Enterprises, Inc. v. Davis,* 709 So.2d 1132, 1139 (Ala.1997). However, whether a breach of a duty has occurred is generally a question for the jury. *See Dale v. Kelly,* 620 So.2d 632, 634 (Ala. 1993).

Defendants argue that they did not breach any alleged duty to the Plaintiff.

(Def.s' Mem. at 7.) In support of their argument, Defendants provide the affidavit of a qualified expert who states that the bulldozer "meets or exceeds all applicable MSHA standards and OSHA standards which would be applicable to the dozer in the use to which it was put." (Borghoff Aff.) Once again, the court finds that Defendants have met their initial burden of identifying portions of the record which show an absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

■ Plaintiff again counters with sufficient evidence to raise a genuine issue of material fact, thus placing the existence of a breach in question. Plaintiff produces the affidavit of his expert, Derek Barrentine. Mr. Barrentine avers that the bulldozer in question was not safe and needed a cage surrounding the operator's area. (Barrentine Aff.) Given the contradictory evidence provided by Defendants and Plaintiff, the record reveals that the issue of whether Defendants breached any alleged duty to Plaintiff is one best left to the trier of fact.

### C. Assumption of the Risk

■ Defendants further argue that if the bulldozer was dangerous, such danger was well known and assumed by Plaintiff. (Def.s' Mem. at 8.) Assumption of risk is an affirmative defense which requires a showing that Plaintiff: (1) knew of and appreciated the danger he incurred, and (2) voluntarily consented to bear that risk. *See Kelton v. Gulf States Steel, Inc.,* 575 So.2d 1054, 1055 (Ala.1991). It is true, as Defendants note, that assumption of risk is a complete defense. *See Ex parte Barran,* 730 So.2d 203, 206 (Ala.1998). However, the question of whether Plaintiff assumed the risk is one steeped in factual issues. Consequently, it is typically improper to decide assumption of risk on summary judgment, and it is often left for the jury.

*See Breeden v. Hardy Corp.*, 562 So.2d 159, 161 (Ala.1990); *Bogue v. R & M Grocery*, 553 So.2d 545, 547 (Ala.1989).

Defendants cite to substantial evidence which shows that Plaintiff knew of and appreciated the risk of harm in operating the bulldozer. Primary among this evidence is Plaintiff's admissions that he knew the bulldozer was dangerous and could kill him. (Turner Dep. at 64–66.) Despite this knowledge, though, Plaintiff continued to operate the bulldozer. (*Id.* at 81.) Defendants contend that these admissions show it is "obvious" that Plaintiff voluntarily assumed the risk by operating the bulldozer. (Def.'s Mem. at 13.) Again, the court finds that Defendants have met their initial burden of identifying portions of the record which show an absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Plaintiff argues that he did not assume the risk voluntarily. In support of this contention, Plaintiff points out that he repeatedly complained about operating the bulldozer without a cage. (Pl.'s Resp. at 3.) Moreover, Plaintiff felt as though he had no choice but to operate the ill-equipped bulldozer. (Turner Dep. at 81.)

Whether Plaintiff knew of and appreciated the risks of operating the bulldozer is uncontested. Plaintiff simply does not offer any facts to refute this element of assumption of risk. Additionally, both Plaintiff and Defendants agree on the facts as to whether Plaintiff *voluntarily* assumed the risk. What is contested, however, is the definition of "voluntary."

■ The Supreme Court of Alabama has set out paramaters for when the doctrine of assumption of risk applies:

> [The doctrine] can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger; and it has no application

where a continued exposure to risk is due to a lack of reasonable opportunity to escape after the danger is appreciated, or is the result of influence, circumstances, or surroundings which are a real inducement to continue.

*Kemp v. Jackson*, 274 Ala. 29, 145 So.2d 187, 194 (1962). Whether the circumstances of the case sub judice were a proper "inducement to continue" working is a factual question. *Id.* Plaintiff avers that he felt as though he had no choice but to continue working in the face of the risk. (Pl.'s Resp. at 4–5.) Because the court finds that a reasonable jury could determine that Plaintiff's assumption of the risk was not voluntary, summary judgment is inappropriate as to Defendants' affirmative defense of assumption of the risk.

### D. Contributory Negligence

■ Defendants' final argument is that Plaintiff's claim must be barred because Plaintiff was contributorily negligent. (Def.s' Mem. at 13.) Contributory negligence requires proof that the plaintiff knew of and appreciated the danger as well as proof that the plaintiff "failed to exercise reasonable care." *Sprouse v. Belcher Oil Company*, 577 So.2d 443, 444 (Ala.1991). Because contributory negligence requires the trier of fact to determine the reasonableness of the plaintiff's actions, it is generally a question for the jury. *See Bogue*, 553 So.2d at 547.

Defendants argue that Plaintiff did not exercise reasonable care while operating the bulldozer and, thus, he was contributorily negligent. (Def.s' Mem. at 15.) In support of their argument, Defendants argue that Plaintiff failed to "look out the bull dozer [sic] when he believed there were dangers involved." *Id.* Additionally, Defendants point out that Plaintiff did not determine whether the tree which led to his injury was alive or dead. This, Defendants argue, shows that Plaintiff could have easily prevented the accident had he

simply realized the tree was, in fact, dead. (*Id.* at 15–16.) The court finds that Defendants have met their initial burden of identifying portions of the record which show an absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

 On the other hand, Plaintiff argues that his actions on the day of the accident were reasonable under the circumstances. (Pl.'s Resp. at 7.) Plaintiff testified that it would be impracticable to get off the tractor and check each tree individually. (Turner Dep. at 69.) Moreover, Plaintiff correctly points out that his precautions were not infallible. (*Id.* at 70.) Plaintiff argues that whether he took certain precautions requires a reasonableness inquiry by the trier of fact. (Pl.'s Resp. at 7.) In response, Defendants note that a finding of contributory negligence is proper when the facts would lead *all* reasonable jurors to reach the same conclusion. *Wallace v. Doege,* 484 So.2d 404, 406 (Ala.1986) (emphasis added). A careful review of the record, however, reveals that whether Plaintiff was contributorily negligent is not an issue upon which all reasonable jurors must reach the same conclusion. The court finds that a determination of whether or not Plaintiff's actions leading up to the accident were reasonable requires a myriad of factual findings. The court is not prepared to make such an inquiry and finds that it is best left to the jury. Therefore, based on the foregoing, the court finds that summary judgment is inappropriate as to Defendants' affirmative defense of contributory negligence.

## V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby DENIED.