Dr. C. Robert MITCHELL, Plaintiff,

v.

Frank S. SKINNER, Jr., individually and as mayor of the City of Hoover; William Billingsley, individually and as a council member of the Hoover City Council; David Bradley, individually and as a member of the Hoover City Council; Barbara McCollum, individually and as a member of the Hoover City Council; Richard Linn, individually and as a member of the Hoover City Council; Sheila Trimm, individually and as a member of the Hoover City Council; Jack H. Harrison, individually and as a member of the Hoover City Council; City of Hoover, a Municipal Corporation; Curtis W. Gordon, Jr., an individual; Susanne H. Bray, an individual; and Alex Frank "Chic" Farris, an individual, Defendants.

No. CV–91–N–1024–S.

United States District Court,
N.D. Alabama, S.D.

June 8, 1992.

F. Timothy McAbee, F. Timothy McAbee P.C., Birmingham, Ala., for plaintiff.

Walter J. Sears, III, MacBeth Wagnon, Jr. Bradley Arant Rose & White; Robert E. Parsons, Parsons Lee & Juliano; Ezra B. Perry, Jr., Corley Moncus & Ward; Edward O. Conerly, McDaniel Hall Conerly & Lusk; Joseph Allen Schreiber, Lloyd Bradford Schreiber & Gray P.C.; Henry Frohsin, Wesley C. Redmond, Berkowitz Lefkovits Isom & Kushner; and Roderick K. Nelson and Paul Albert Miller, Lamar Nelson & Miller, Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

This is a civil action brought by the former superintendent of the Hoover, Alabama city school system. In his original complaint, the plaintiff, Dr. Robert Mitchell, asserted six constitutional claims pursuant to 42 U.S.C. § 1983 and three state law claims under the court's supplemental jurisdiction, 28 U.S.C. § 1367, all of which arose out of events occurring in connection with his appointment, service, and discharge as superintendent. In an Order entered October 9, 1991, the court granted the defendants' motions to dismiss with respect to certain of the claims. This action is presently before the court on the motions for summary judgment filed by the

defendants. The motions have been fully briefed and are ready for decision.

## I. BACKGROUND

### A. Facts

According to the record,[1] the plaintiff, Dr. Robert Mitchell, served as Superintendent of the Hoover City Board of Education from January 16, 1988, until he was terminated by the Board on April 29, 1991. On May 6, 1991, the plaintiff filed this civil action against defendants Frank S. Skinner, Jr., William Billingsley, David Bradley, Barbara McCollum, Richard Linn, Sheila Trimm, Jack Harrison, and the City of Hoover [sometimes hereinafter referred to collectively as the "City Defendants"], and defendants Curtis W. Gordon, Jr., Susanne H. Bray, and Alex Frank "Chic" Farris alleging various violations of his rights under both the United States Constitution and Alabama law. Defendant Skinner is the Mayor of the City of Hoover. Defendants Billingsley, Bradley, McCollum, Linn, and Trimm comprise the Hoover City Council. Defendant Harrison is the Hoover City Attorney. Defendant City of Hoover is a municipal corporation organized under the laws of the State of Alabama. Defendants Bray and Farris are members of the Hoover City Board of Education ("Board"). Defendant Gordon, a private citizen, is a former law partner of defendant Harrison.

The claims asserted in the Second Amended Complaint arose out of the termination of Dr. Mitchell's employment contract and his removal as Superintendent of the Hoover City Schools. The City Defendants, in their brief in support of their motion for summary judgment, focus primarily on the actions of the Hoover City Board of Education during April 1991 up to an including the April 29 vote to terminate Dr. Mitchell's contract with the school board. In contrast, the plaintiff, in his brief in opposition to the motions for summary judgment, paints a broad picture of the political environment in the City of Hoover, including a detailed description of the alleged hostile relationship that existed between Dr. Mitchell and certain members

1. The court considered the following evidence submitted by these defendants in support of the motions for summary judgment: (1) Excerpts from the deposition of Dr. Paul Doran; (2) excerpts from the deposition of Robert R. Keith; (3) Excerpts from the deposition of Donald B. Sweeney, Jr.; (4) Deposition Ex. 10, which included the Minutes of April 29, 1991, meeting of Hoover Board of Education, with copies of the March 5, 1991, Employment Contract and the Acknowledgement and Mutual Release attached; (5) Deposition Ex. 28 (Letter from Sweeney to McAbee dated April 29, 1991; (6) Deposition Ex. 29 (Letter from Sweeney to McAbee dated April 29, 1991); (7) Deposition Ex. 30 (Letter from McAbee to Sweeney dated April 29, 1991); (8) State court complaint filed April 15, 1991; (9) Order in state court action entered April 23, 1991; and (1) Notice of Dismissal of state court action, filed May 3, 1991.

The court considered the following evidence submitted by the plaintiff in opposition to the motions for summary judgment: (1) Excerpts from the deposition Dr. Paul N. Doran; (2) Excerpts from the deposition of Ralph Keith, Jr.; (3) Excerpts from the deposition of Donald B. Sweeney, Jr.; (4) Deposition Ex. 9, which included Minutes of March 5, 1991, meeting of Hoover Board of Education (5) Deposition Ex. 10, which included the Minutes of April 29, 1991, meeting of Hoover Board of Education; (6) Deposition Ex. 11, Mitchell Contract Valuation Calculations; (7) Deposition Ex. 27 (Letter from Sweeney to White dated April 22, 1991); (8) Deposition Ex. 28 (Letter from Sweeney to McAbee dated April 29, 1991); (9) Deposition Ex. 29 (Letter from Sweeney to McAbee dated April 29, 1991); (10) Deposition Ex. 30 (Letter from McAbee to Sweeney dated April 29, 1991); (11) Deposition Ex. 1 (Letter from Sweeney to Harrison dated April 9, 1991); (12) State court complaint, filed April 15, 1991; (13) Order in state court action entered April 23, 1991; and (14) Notice of Dismissal of state court action, filed May 3, 1991.

The court briefly reviewed the following additional materials submitted by the plaintiff to determine their contents, but did not consider them in ruling on the motions for summary judgment: (1) Affidavit of Leo Butler dated April 14, 1991; (2) Affidavit of Joseph G. Giattina dated April 12, 1991; (3) Affidavit of Robert C. Mitchell dated February 4, 1992, including exhibits A through F; (4) Affidavit of Harold E. Shepherd dated April 14, 1991; (5) Affidavit of Harold E. Shepherd dated February 5, 1992, including exhibits A through C; (6) Affidavit of Martha G. Stone dated April 14, 1991; and (7) Affidavit of Karen B. Sturgeon dated April 14, 1991. The court did not consider these materials in ruling on the motions because they deal primarily with the plaintiff's allegedly poor relationship with Mayor Skinner and the Hoover City Council and, therefore, are not relevant to the narrow issue of consent raised in the defendants' motions for summary judgment.

of the school board on the one side and Mayor Skinner and the Hoover City Council on the other. Although the plaintiff characterizes the defendant's factual recitation as "incomplete," "misleading," and "distorted," (Plaintiff's Brief in Opposition to Motions for Summary Judgment at 2), the additional facts provided by the plaintiff are not material to the issues before the court on defendants motions for summary judgment.[2]

For purposes of the pending motions for summary judgment, the material facts are as follows:

1. On March 5, 1991, the Hoover Board of Education granted Dr. Mitchell a new contract. The principal effect of the new contract was to extend Dr. Mitchell's term of employment from three years to five years. Both the old and new contracts included a provision that permitted the Board to unilaterally terminate the contract without cause. Both contracts also provided that, upon such unilateral termination, the Board was required to pay Dr. Mitchell all of the salary and benefits he would have received if he had remained as Superintendent for the full term of the contract. (See City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10 (Employment Contract Between Dr. C. Robert Mitchell and the Hoover City Board of Education, dated March 5, 1991), at ¶ IX.B).

2. On April 15, 1991, Dr. Mitchell filed suit in Jefferson County Circuit Court against the City Defendants. He sought injunctive relief to restrain them from making public statements, including press releases, which he alleged interfered with the Board of Education and with him personally in his efforts to manage the Hoover City School System. Dr. Mitchell also sought money damages for an alleged conspiracy to tortiously and unlawfully interfere with the operation of the Hoover City School

System. (See Appendix to Plaintiff's Brief in Opposition to Motions for Summary Judgment, Ex. 20 (filed copy of state court complaint)). Dr. Mitchell was not acting on behalf of or with the authority of the Board of Education when he filed the state court complaint. (See Keith Depo. at 195–98).

3. On April 18, 1991, a hearing was held before Judge Marvin Cherner wherein Judge Cherner denied the plaintiff's application for a preliminary injunction. (See City Defendants' Brief in Support of Motion for Summary Judgment, Ex. Order (entered April 23, 1991).

4. In mid-April 1991, around the time that Dr. Mitchell filed the state court action, members of the Hoover City Board of Education who had previously been supportive of Dr. Mitchell began discussions and preliminary negotiations with Dr. Mitchell in an attempt to reach an amicable termination of Dr. Mitchell's contract of employment. (See Doran Depo. at 227–32 ("mutual rescission"); Keith Depo. at 123–26 ("bilateral termination"); Sweeney Depo. at 131–33; see also Appendix to Plaintiff's Brief in Opposition to Motions for Summary Judgment, Ex. 8 (letter from Don Sweeney to Mark White, dated April 22, 1991, proposing separation agreement)).

5. Board members Robert Keith and Paul Doran actively participated in the negotiations between Dr. Mitchell and the Board. (See Doran Depo. at 226–28, 230–31; Keith Depo. at 195–98; Sweeney Depo. at 163–66).

6. In the negotiations, Mr. Keith's primary objective was to achieve some form of voluntary separation wherein Dr. Mitchell would receive a settlement package amounting to something less than a full pay-out of his five-year contract. (See Keith Depo. at 130–32; Sweeney Depo. at 161–65). While acknowledging that the Board had the authority to unilaterally ter-

---

2. The City Defendants have moved for summary judgment solely on the theory that Dr. Mitchell consented to the actions that caused his injury. If the court agrees with the City Defendants' legal theory, then the additional facts submitted by the plaintiffs will be irrelevant and immaterial because the plaintiff's consent would consti-

tute a complete bar to all of the plaintiff's § 1983 claims and certain of the state law claims. If the court disagrees with the City Defendants' legal argument, then the motions for summary judgment will denied without the necessity of examining in detail the factual record.

minate his employment, Dr. Mitchell consistently expressed his desire to remain as superintendent. In addition, Dr. Mitchell steadfastly refused to accept anything less than full payment pursuant to the terms of the March 5, 1991, contract. (*See* Doran Depo. at 229–33; Sweeney Depo. at 153–55, 162–68; City Defendants' Brief In Support of Motion for Summary Judgment, Ex. 30 (letter from Tim McAbee to Don Sweeney, dated April 29, 1991)).

7. On April 24, 1991, a meeting was held in Robert Keith's office to discuss the terms for some form of mutually agreeable separation. The meeting included Board members Keith and Doran, Board attorney Don Sweeney, Dr. Mitchell, and Tim McAbee, Dr. Mitchell's principal attorney. No agreement was reached. Dr. Mitchell maintained his position that he did not wish to be terminated, and he adamantly refused to accept anything less than the full amount payable under the terms of the March 5, 1991, contract. (*See* Keith Depo. at 121–33; Sweeney Depo. at 159–68).

8. After the April 24, 1991, meeting, Board members Keith and Doran apparently realized that Dr. Mitchell was not going to resign and that he was not going to accept anything less than a full payout pursuant to the terms of the March 5, 1991, contract. Thus, Dr. Doran requested that the Board's Certified Public Accountant (CPA), Dusty Pritchett, calculate what Dr. Mitchell would be entitled to receive in the event of a unilateral termination and draw up a proposed payment schedule. (*See* Doran Depo. at 246–48; Keith Depo. at 141–42; Sweeney Depo. at 169–72).

9. Mr. Pritchett made the appropriate calculations and prepared a payout schedule, which included certain payments to be made immediately, followed by a series of ten monthly payments, at the end of which Dr. Mitchell would receive a lump sum payment equal to the then present value of the balance of his five-year contract. (*See* Keith Depo. at 137–38; Sweeney Depo. at 177–78). Counsel for Dr. Mitchell reviewed the proposed calculations with the Board's CPA on Friday, April 26, 1991. (*See* Appendix to Plaintiff's Brief in Opposition to

Motions for Summary Judgment, Ex. 11 (Letter from Tim McAbee to Don Sweeney, dated April 29, 1991)).

10. Board members Keith and Doran considered it important to get a release from Mitchell in connection with the termination. (*See* Doran Depo. at 387–90; Keith Depo. at 139–42, 150–57).

11. On Friday, April 26, 1991, counsel for Dr. Mitchell assured the Board's attorney Don Sweeney that, while Dr. Mitchell still preferred to remain as Superintendent, if the Board elected to terminate his contract under the unilateral termination provision, and if the Board would accept the other terms that he requested, Dr. Mitchell would accept a payout based on the calculations and the schedule prepared by the Board's CPA and would execute a release in favor of the Board. (*See* Sweeney Depo. at 317–19 (Mitchell "willing to acquiesce" to Board's proposed payout). Counsel for Dr. Mitchell volunteered to prepare the release. (*See* Appendix to Plaintiff's Brief in Opposition to Motions for Summary Judgment, Ex. 11 (letter from Tim McAbee to Don Sweeney, dated April 29, 1991)).

12. By a letter dictated over the weekend of April 27–28, 1991, Board attorney Sweeney asked counsel for Dr. Mitchell to prepare a release that Dr. Mitchell would be willing to sign. (*See* Sweeney Depo. at 174–77; City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 28 (letter from Don Sweeney to Tim McAbee, dated April 29, 1991)).

13. On the evening of April 29, 1991, the Hoover City Board of Education held a regular board meeting. After disposing of routine business, the Board went into an executive session wherein the Board members discussed whether to exercise the unilateral termination provision of Dr. Mitchell's employment contract. (*See* Doran Depo. at 245–46; Keith Depo. at 146–48; City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10 (Minutes of April 29, 1991, Board meeting)).

14. Up to the time when they went into executive session, there apparently was no agreement or understanding among the Board members as to what they were go-

ing to do about Dr. Mitchell's contract. (*See* Doran Depo. at 225–26, 241–43, 327 ("I did not commit to the way that I was going to vote until I came out of that Executive Session"); Keith Depo. at 139, 148–49, 154–55 ("when I walked out of the room to go in there and vote I wasn't absolutely sure how I was going to vote")).

15. During the executive session, copies of a release and payout agreement prepared by counsel for Dr. Mitchell were circulated among the Board members. The proposed agreement incorporated the payout schedule that was prepared by the Board's CPA. (*See* Sweeney Depo. at 181–84, 191; City Defendants' Brief in Support of Motion for Summary Judgment, Exs. 29 & 30; *see also* City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10, Attachment D (Acknowledgment and Mutual Release)). A form of resolution to unilaterally terminate Dr. Mitchell's contract also was circulated during the executive session. (Keith Depo. at 145, 150–51; *see* City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10, Attachment C (Resolution)).

16. The Board members did not reach any agreement during the executive session as to how they would vote on the resolution to terminate Dr. Mitchell's contract. When they returned to the public meeting, Dr. Doran read the resolution to terminate Dr. Mitchell. Mr. Keith made a motion to approve the resolution. Mr. Farris seconded the motion. It passed on a vote of 4–0, with Mr. Shepherd abstaining. (*See* Doran Depo. at 267; Keith Depo. at 164–66; City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10

(Minutes of April 29, 1991, Board meeting)).

17. Immediately following the Board meeting, the Acknowledgment and Mutual Release was executed by Dr. Mitchell and by Dr. Doran, in his capacity as President of the Hoover City Board of Education. There was no further discussion about the payout terms or any other terms, and no changes were made to the release agreement. (*See* Doran Depo. at 254–55; Keith Depo. at 145; Sweeney Depo. at 201–06, 220–21; City Defendants' Brief in Support of Motion for Summary Judgment, Ex. 10, Attachment D (Acknowledgment and Mutual Release)).

18. Although Dr. Mitchell and his attorney were present throughout the public portions of the Board meeting, neither of them requested any kind of · hearing or opportunity to oppose the motion and neither of them expressed any objection to the motion to terminate Dr. Mitchell's contract. (*See* Doran Depo. at 243–44, 265–66; Sweeney Depo. at 200–01).

B. Summary of Plaintiff's Claims

The following causes of action asserted in the Second Amended Complaint were dismissed by the court in its Order and Memorandum of Opinion, entered October 9, 1991:

1. Deprivation of a Property Interest in Contract of Employment Without Due Process of Law [Counts 13–23] [3]
2. Deprivation of a Property Interest in Reasonable Expectation of Continued Public Employment Without Due Process of Law [Counts 24–34] [4]
3. Conspiracy to Commit the Tort of Outrage and Tort of Outrage [Counts 73–83] [5]

---

**3.** The court granted the motions to dismiss to the extent that the plaintiff relies upon his employment contract as the basis for his property interest and denied the motions to the extent that the plaintiff relies upon the Alabama Teacher Tenure Act as the basis for a property interest. By separate order, which was entered October 4, 1991, the court certified questions to the Alabama Supreme Court as to whether the plaintiff had acquired a property interest in his employment as superintendent pursuant to the Alabama Teacher Tenure Act, Ala.Code §§ 16–12–1 *et seq.* The court has been informed that the parties have submitted briefs to the Alabama

Supreme Court and are awaiting an answer to the certified questions at this time.

**4.** Under Alabama law, a public office created by the legislature is not the property of the office holder within the constitutional provision against depriving a person of property without due process of law. *See City of Birmingham v. Graffeo,* 551 So.2d 357, 364 (Ala.1989).

**5.** The allegations in the complaint are insufficient to state a cause of action under Alabama law. *See American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980).

The following causes of action asserted in the Second Amended Complaint are presently pending before the court:

1. Conspiracy to Violate Civil Rights [Count 1][6]

2. Violation of First Amendment Rights [Counts 2–12]

3. Deprivation of a Liberty Interest to Take Advantage of Other Suitable Employment Opportunities and in Rebutting Defamatory Accusations Without Due Process of Law and [Counts 35–56]

4. Conspiracy to Tortiously Interfere With Contract and Tortious Interference with Contract [Counts 57–67]

5. Conspiracy to Defame and Tort of Defamation [Counts 68–72]

## II. DISCUSSION

### A. Standard of Review

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552; *see* Fed. R.Civ.P. 56(a) and (b). There is no require-

ment, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Once the moving party has met his burden, rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party need not present evidence in a form necessary for admission at trial, however she may not merely rest on her pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

---

**6.** This claim remains valid only to the extent that the plaintiff successfully establishes an actual violation of his constitutional rights. *See*

*Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir.1990).

a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; *see also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted); *accord Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## B. Motions for Summary Judgment

▮ Rather than arguing the merits of the various constitutional and state law causes of action asserted by Dr. Mitchell, the City Defendants have focussed their motion for summary judgment solely on the issue of whether Dr. Mitchell consented to the termination of his employment contract.[7] Defendants Gordon, Bray, and Farris have joined in the City Defendants motion for summary judgment. Defendants Bray and Farris also have argued that they are entitled to summary judgment based on the terms of the Acknowledgment and Mutual Release executed by Dr. Mitchell and the Board of Education upon the termination of his employment.[8]

Citing the common-law maxim *volenti non fit injuria* ("he who consents cannot receive an injury"), the City Defendants argue that "the fundamental weakness in all of [the plaintiff's] claims is that Mitchell actually *consented to the termination of his employment contract.*" (City Defendants' Brief in Support of Motion for Summary Judgment at 2 (emphasis in original)). The defendants argue that the principal injuries alleged by the plaintiff in most counts of the Second Amended Complaint result from (1) the termination of his employment contract or (2) the actions of the defendants in order to bring about the termination of the employment contract. In support of their claim that Dr. Mitchell consented to the termination of his contract, the defendants have submitted deposition excerpts and correspondence indicating that Dr. Mitchell negotiated favorable terms under which he would acquiesce to the unilateral termination of his employment contract. (*See, e.g.,* Keith Depo. at 137–38; Sweeney Depo. at 177–78; Appendix to Plaintiff's Brief in Opposition to Motions for Summary Judgment, Ex. 11 (Letter from Tim McAbee to Don Sweeney, dated April 29, 1991).

7. The only argument in the City Defendants' brief in support of the motion for summary judgment that addresses a specific claim asserted by the plaintiff is an argument that the plaintiff cannot show any denial of due process. (*See* City Defendants' Brief in Support of Motion for Summary Judgment at 5). This argument, however, has limited relevance to the remaining claims in this litigation. In its Order and Memorandum of Opinion granting in part the defendants' motions to dismiss, the court dismissed the plaintiff's procedural due process claims (Counts 13 through 23) to the extent that

the plaintiff relied on his employment contract as a source of a property right. Although the plaintiff's procedural due process claims were not dismissed to the extent that the plaintiff has a property right under the Alabama Teacher Tenure Act, it is unclear whether the specific requirements of the Act were satisfied.

8. For the reasons stated below, however, it is not necessary that the court consider the separate argument asserted by these defendants.

It is well settled that 42 U.S.C. § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961), *overruled in part on other grounds, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A fundamental principle of the common law is the concept that "no one may maintain an action to recover for an injury occasioned by an act to which he has consented." 1 Am.Jur.2d *Actions* § 53 (1962). Imported from the civil law,[9] the maxim *volenti non fit injuria*[10] expresses the general principle that "[o]ne who knows of a danger arising from the act or omission of another, and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure." Warren, Volenti Non Fit Injuria *in Actions of Negligence*, 8 Harv.L.Rev. 457, 459 (1895) (citing *Fitzgerald v. Conn. River R.R.*, 155 Mass. 156 (1891)). This principle applies regardless of whether the plaintiff consented to the actions of the defendants or the injury resulting from those actions. As Prosser explains: "[W]hen the defendant by his conduct intentionally interferes with a legally protected interest of person or property, either consent to the invasion resulting from such conduct, or consent to the conduct that brought about the invasion, avoids liability." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 18, at 113 (5th ed. 1984). The Fifth Circuit has held that "the tort principle of *volenti non fit injuria* applies to a claim asserted for a civil rights violation under 42 U.S.C.A. § 1983 as well as to the common-law causes of action." *Pierson v. Ray*, 352 F.2d 213, 221 (5th Cir. 1965), *modified*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[11] Thus, despite the plaintiff's assertions to the contrary, the maxim will operate to bar Dr. Mitchell's constitutional claims based on the termination of his employment contract—the primary injury made the basis of this action—if the evidence demonstrates that he consented to the termination of his employment contract regardless of whether he consented to the specific actions of the defendants.

While courts have recognized and applied *volenti* in a variety of factual situations, the maxim has had its broadest application in the master-servant context as employers routinely asserted assumption of the risk as a defense to negligence actions brought by their employees for work related injuries. For example, in *Foreman v. Dorsey Trailers, Inc.*, 256 Ala. 253, 54 So.2d 499 (1951), the Alabama Supreme Court described the use of the maxim in the employment context as follows:

> It is founded on the consent, expressed or implied, of the employee, with full

**9.** The legal principle underlying the maxim *volenti non fit injuria* has its roots in Justinian's *Codex* (529 A.D.) and *Digest* (533 A.D.) and the *Liber Sextus* of Pope Boniface VIII (thirteenth century). Ingman, *A History of the Defence of* Volenti Non Fit Injuria, 26 Jurid.Rev. 1, 1–2 (1981).

**10.** Most courts and commentators regard the maxim *volenti non fit injuria* to be synonymous with assumption of the risk, although there is some historical justification for making a distinction between the two doctrines. North, *Employees' Assumption of Risk: Real or Illusory Choice*, 52 Tenn.L.Rev. 35, 36 (1984); *see, e.g., Kelly v. General Telephone Company*, 485 F.2d 1315, 1320 n. 4 (5th Cir.1973) (applying Texas law). *But see Atlantic Cost Line R. Co. v. Mangum*, 250 Ala. 431, 34 So.2d 848 (1948) (recognizing that abolition of assumption of risk in FELA action may not have abolished the principle of *volenti non fit injuria* in same actions).

In distinguishing *volenti* from contributory negligence, the Alabama Supreme Court described the maxim as follows: "Harm suffered by consent is not, in general, the basis of a civil action." *Kemp v. Jackson*, 274 Ala. 29, 37, 145 So.2d 187, 195 (1962). Unlike the defense of contributory negligence, wherein the defendant acknowledges that he owed a duty to the plaintiff but argues that the breach of that duty was not the sole proximate cause of the plaintiff's injury, the maxim *volenti non fit injuria* is actually a claim that the defendant owed no duty to the plaintiff in the first place. *See* Warren, Volenti Non Fit Injuria *in Actions of Negligence*, 8 Harv.L.Rev. 457, 458 (1895).

**11.** The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

knowledge and appreciation of obvious danger and the taking of chances of injury or escape from such threatening situation or condition under which he contracts or voluntarily undertakes to discharge his services. The implication of consent does not arise or exist unless the defect and danger are obvious—known to and appreciated by such employee. There must be not only a knowledge of the dangerous condition, but also an appreciation of the risk resulting or which may follow.

*Foreman*, 54 So.2d at 503. The enactment of state workmen's compensation laws [12] and the subsequent amendment of the Federal Employers' Liability Act in 1939 [13] generally abolished the use of assumption of the risk as a defense in the employment context. Despite these limitations, Alabama courts have continued to apply the common-law maxim in a variety of situations. *See, e.g., Hope v. Brannan,* 557 So.2d 1208 (Ala.1989) (maxim applied to purchasers of used home who failed to inspect house before purchasing); *Wilson v. World Omni Leasing, Inc.,* 540 So.2d 713 (Ala.1989) (maxim applied to lessee of truck who failed to read lease agreement); *Wilson v. Brown,* 496 So.2d 756 (Ala.1986) (maxim applied to buyers of corporation who failed to examine business records of corporation before purchasing stock).

Dr. Mitchell argues in response that the maxim *volenti non fit injuria* is not applicable because the *volenti* defense requires that a plaintiff consent to the actual conduct of the defendants, not just to the consequences of the defendants' conduct. (Plaintiff's Brief in Opposition to the Motion for Summary Judgment at 17–18). Dr. Mitchell asserts that "[t]he paramount question then is whether Dr. Mitchell consented to the Defendants conduct which caused his injuries, not whether he consent-ed to the Board's termination of his employment contract." (Plaintiff's Brief in Opposition to Motions for Summary Judgment at 18–19). However, as Prosser explains, "either consent to the invasion resulting from such conduct, or consent to the conduct that brought about the invasion, avoids liability." Prosser and Keeton on the Law of Torts, *supra,* § 18, at 113.

In support of his contention that he did not consent to the termination of his employment contract, Dr. Mitchell has submitted deposition excerpts and correspondence indicating that he consistently expressed his desire to remain as superintendent. Upon examination of the evidence in the record, however, it is clear that Dr. Mitchell and his attorneys vigorously negotiated a favorable severance package which included full benefits under the terms of his employment contract as well as a release drafted in such a manner to allow him to pursue claims against both individual members of the school board as well as the mayor and city council. (Sweeney Depo. at 217–19). Further, both Dr. Mitchell and his attorney sat silently through the Board meeting of April 29, 1991, neither protesting nor seeking an opportunity to be heard. Dr. Mitchell silently waited as the Board went into an executive session and reviewed the terms of the Acknowledgment and Mutual Release that was prepared by his own attorney. Thus, as the Alabama Supreme Court has recognized, "[h]arm suffered by consent is not, in general, the basis of a civil action." *Kemp v. Jackson,* 274 Ala. 29, 37, 145 So.2d 187, 195 (1962). The court concludes that Dr. Mitchell consented to the termination of his contract and that consent creates a complete bar to his § 1983 claims and to the pendent claims for tortious interference with contract.

 The defendants' motions for summary judgment will be GRANTED with

---

**12.** In Alabama, for example, the legislature enacted the Alabama Workmen's Compensation Act in 1919 wherein it abolished the "unholy trinity" of common law defenses (assumption of the risk, contributory negligence, and fellow servant rule) that previously could be asserted by employers as defenses to negligence actions brought by employees. *See* Ala.Code § 25–5–32; *see generally* C. Gamble, Alabama Law of Dam-ages § 21–7, at 255 (2d ed. 1988); M. Roberts & G. Cusimano, Alabama Tort Law Handbook § 13.0 (1990).

**13.** *See* 45 U.S.C. § 54 ("such employee shall not be held to have assumed the risks of his employment").

respect to the plaintiff's claims for conspiracy to violate civil rights [Count 1] because the court concludes that the plaintiff has failed to establish an actual violation of his constitutional rights. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990). The motions for summary judgment will be GRANTED with respect to the plaintiff's claims for violation of his first amendment rights [Counts 2–12] because the court concludes that the plaintiff consented to his termination and that such consent forms a bar to a § 1983 action for damages based on a claim that he was terminated in retaliation for exercising his first amendment rights. Consent to the termination negates an essential element of the plaintiff's cause of action. The motions for summary judgment will be GRANTED with respect to the plaintiff's claim for deprivation of a liberty interest to take advantage of other suitable employment opportunities and in rebutting defamatory accusations without due process of law [Counts 35–56]. Applying the common-law maxim, consent to termination creates a complete bar to actions based on allegedly stigmatizing charges associated with such termination. Likewise, a claim of defamation is actionable under § 1983 only if it is coupled with a deprivation of employment. *Von Stein v. Brescher*, 904 F.2d 572 (11th Cir.1990). Consent to the deprivation of employment negates an essential element of the cause of action and forms a bar to an action based on such termination. Finally, the motions for summary judgment will be GRANTED with respect to the plaintiff's claims for conspiracy to tortiously interfere with contract and tortious interference with contract [Counts 57–67] because consent to the termination of the employment contract negates an essential element of the cause of action under Alabama law and creates a complete bar to an action based on such termination. *See generally Gross v. Lowder Realty Better Homes and Garden*, 494 So.2d 590 (Ala. 1986).

The motions for summary judgment will be DENIED with respect to the plaintiff's claims against all defendants for conspiracy to defame [Count 68] and against defendants McCollum, Harrison, Farris, and Gordon for defamation [Counts 69–72] because the defendants have produced no evidence that the plaintiff consented to the allegedly defamatory statements made by the defendants.

## III. CONCLUSION

The maxim *volenti non fit injuria* expresses the fundamental common-law principle that a plaintiff cannot assert a cause of action based on an injury to which he consented. The evidence in the record clearly demonstrates that the plaintiff negotiated the terms of and acquiesced to the termination of his employment contract with the Hoover City Board of Education. With the exception of the plaintiff's claims for defamation and conspiracy to defame, the causes of action asserted in the Second Amended Complaint are based on or are derived from the termination of the employment contract. The maxim forms a complete bar to such claims. The defendants' motions for summary judgment will be GRANTED with respect to all remaining claims except the claims for conspiracy to defame and defamation. An appropriate order will be entered contemporaneously herewith.

### ORDER

In accord with the Memorandum of Opinion entered contemporaneously herewith, it is hereby ORDERED, ADJUDGED, and DECREED:

1. The defendants' motions for summary judgment are GRANTED with respect to the plaintiff's claims for conspiracy to violate civil rights [Count 1] and Count 1 is DISMISSED.

2. The defendants' motions for summary judgment are GRANTED with respect to the plaintiff's claims for violation of first amendment rights [Counts 2–12] and Counts 2–12 are DISMISSED.

3. The defendants' motions for summary judgment are GRANTED with respect to the plaintiff's claims for deprivation of a liberty interest to take advantage of other suitable employ-

ment opportunities and in rebutting defamatory accusations without due process of law and [Counts 35–56] and counts 35–56 are DISMISSED.

4. The defendants' motions for summary judgment are GRANTED with respect to the plaintiff's claims for conspiracy to tortiously interfere with contract and tortious interference with contract [Counts 57–67] and Counts 57–67 are DISMISSED; and

5. The defendants' motions for summary judgment are DENIED with respect to the plaintiff's claims for conspiracy to defame and tort of defamation [Counts 68–72].