HOUSTON, Justice.
The United States District Court for the Northern District of Alabama, 796 F.Supp. 1464, certified the following questions of law to us:
“1. At the time his contract was terminated by the Hoover board of education on April 29, 1991, had C. Robert Mitchell, as superintendent, of the Hoover school system, attained ‘continuing service status’ as defined at Ala.Code [1975,] § 16-24-2?
“2. If [Dr.] Mitchell had attained ‘continuing service status’ on April 29, 1991, did he ‘abandon’ his tenure rights by entering into a contract on March 5, 1991, that contained a provision permitting the school board to unilaterally terminate his employment?
“3. Did [Dr. Mitchell] acquire a property interest in his employment under the provisions of Ala.Code § 16-12-1?
“4. If [Dr.] Mitchell had a property interest in his employment by virtue of Ala.Code § 16-12-1, did he relinquish that interest by entering into a contract on March 5, 1991, that contained a provision permitting the school board to unilaterally terminate his employment?”
The following statement of the case and pertinent facts was provided by the district court for our consideration:
“The plaintiff, C. Robert Mitchell, claims inter alia that he was, without due process of law, deprived of a property interest in his continued employment as superintendent of the school system of Hoover, Alabama, when the school board of that city exercised its right under a provision of his employment contract to unilaterally terminate his employment. Defendants are the mayor and other officials of the city of Hoover, members of its school board, and other private citizens. The action is before the court on motion of the defendants to dismiss for failure to state a claim upon which relief can be granted.
“The pertinent facts alleged by [Dr. Mitchell] and out of which this claim arises are:
“A. On October 5, 1987, the Hoover, Alabama, City Council created the Hoover City Board of Education in accord *1025 with the provisions of Ala.Code § 16-11-1 et seq.
“B. [Dr. Mitchell] was appointed to the position of superintendent of the Hoover, Alabama, school system and assumed the duties of that office on January 16, 1988.
“C. The Hoover school system operated its first school year beginning in the fall of 1988 and ending in the spring of 1989.
“D. On March 5, 1991, Mitchell and the Hoover school board entered into a second contract that superseded and replaced all previous agreements between them. The new contract covered the period of March 5, 1991, to March 4, 1996, and was subject to an automatic extension provision.
“E. During the period of more than three years that Mr. Mitchell served as Hoover school superintendent, there occurred numerous incidents, both public and private, of conflicts between [Dr. Mitchell] and the defendants.
“F. On April 29, 1991, the Hoover board of education exercised its rights under a unilateral termination provision of the March 6, 1991, contract to terminate Mr. Mitchell’s employment as the school superintendent.”
Relying on Ex parte Oden, 495 So.2d 664 (Ala.1986), and Ex parte Weaver, 559 So.2d 178 (Ala.1989), Mitchell contends that he acquired continuing service status as a “supervisor” under Ala.Code 1975, §§ 16-24-1 and 16-24-2(a). He argues that the termination of his contract constituted a violation of his due process rights guaranteed under the Fourteenth Amendment to the United States Constitution. The defendants contend that a city school superintendent is not a “supervisor” within the meaning of § 16-24-1 and, thus, that Dr. Mitchell did not acquire continuing service status under § 16-24-2(a). They argue, instead, that Ala.Code 1975, § 16-12-1, determines Dr. Mitchell’s rights in this case.
Section 16-24-1 defines “teacher”:
“The term ‘teacher,’ as employed in this chapter, is deemed to mean and in-elude all persons regularly certified by the teacher certificating authority of the state of Alabama who may be employed as instructors, principals, or supervisors in the public elementary and high schools of the state of Alabama and persons employed as instructors, principals, or supervisors in the Alabama institute for deaf and blind, Alabama industrial school for boys, Alabama industrial school for girls, and Alabama industrial school at Mt. Meigs.”
Section 16-24-2(a) provides:
“Any teacher in the public schools who shall meet the following requirements shall attain continuing service status: Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive school years and shall thereafter be reemployed in such county or city school system the succeeding school year.”
As we noted in Ex parte Oden, and later in Ex parte Weaver, nowhere in the “Education” title of the Code does the legislature define “supervisor.” In construing the word “supervisor” in Ex parte Oden, at 666-67, we held that “the loose, general, and undefined use of the term [‘supervisor’] in the Code” required that a general definition of “supervisor” should apply, i.e., we held that the term “supervisor” should be defined as one who “coordinated, directs], and inspects] continuously and at firsthand the accomplishment of: [one who] oversee[s] with the powers of direction and decision the implementation of one’s own or another’s intentions: [one who] superintend[s].” We further held in Ex parte Oden that, for purposes of the teacher tenure law, this general definition fit the job description for Oden’s position of supervisor of transportation.
In Ex parte Weaver, this Court granted the writ of certiorari to review the holding of the Court of Civil Appeals that Weaver, a tenured teacher, had neglected her duty as a teacher by becoming the superintendent of the school system in which she had served as a teacher for more than 20 years, so that her employment contract as a teacher could be canceled. We *1026 reversed that holding. Although the result we reached in Ex parte Weaver was correct, we did not intend to hold that the legislature had extended the protections of the teacher tenure law to a superintendent of a school system, and such a holding was not necessary for a resolution of that case. We adhere to the view that if a teacher has served as an instructor and has attained continuing service status and thereafter is elected or appointed as a superintendent in the school system in which he or she has attained such status, then that teacher cannot be denied a job as an instructor on the sole ground that he or she had neglected his or her duty as an instructor by serving as superintendent of the school system. The opinion in Ex parte Weaver was overwritten and some of the dicta are wrong, misleading, and due to be overruled, especially this overly broad statement that appears on page 183:
“Based on the foregoing, we hold that the general definition of ‘teacher’ in § 16-24-1 ... includes a county superintendent of education.”
Neither Ex parte Oden nor Ex parte Weaver is authority for the position advocated by Dr. Mitchell in this case. To the contrary, Ala.Code 1975, §§ 16-23-1 (first enacted as part of the 1927 School Code, dealing with the certification of public school employees) and 16-25-1 (enacted September 15, 1939, dealing with the Teachers’ Retirement System), make an obvious distinction between a "superintendent” and a “supervisor”; and Ala.Code 1975, § 16-24-1, which was enacted September 21, 1939, within six days of the enactment of § 16-25-1, does not expressly include a school “superintendent” within the definition of “teacher” for the purposes of the tenure law. Contrary to the dicta in Ex parte Weaver at 181, the wording of these sections provides a clear indication that the legislature did not intend to include a school “superintendent” within the general definition of “supervisor” for purposes of the tenure law. Our conclusion in this regard is further supported by the legislature’s enactment of § 16-12-1, which deals specifically with the appointment, compensation, and removal of city school superintendents:
“The city board of education shall appoint a city superintendent of schools to hold office at the pleasure of the board. The city superintendent of schools shall receive such compensation as the city board of education shall direct. The city board of education may remove the city superintendent of schools for incompetency, immorality, misconduct in office, willful neglect of duty or when, in the opinion of the board, the best interests of the schools require it.”
This section and § 16-12-3, which declares that “[t]he city superintendent of schools shall be the chief executive officer of the city board of education,” indicate that the legislature intended for city school boards to have greater flexibility in choosing their respective superintendents than the law would allow if a city school superintendent could attain continuing service status under the teacher tenure law.
After carefully reviewing the briefs filed in this case, as well as §§ 16-12-1,16-12-3, 16-23-1, 16-24-1, and 16-25-1, we hold that Dr. Mitchell did not attain continuing service status and that his rights were limited by his contract with the board.
For the foregoing reasons, we answer certified questions No. 1 and No. 3 in the negative. Questions No. 2 and No. 4, thus, are moot.
QUESTIONS ANSWERED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., dissents.